IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

**May 6, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | For Publication |
| Appellee | ) | |
| | ) | Filed: May 6, 1996 |
| vs. | ) | |
| | ) | No. 01-S-01-9501-CC-00015 |
| | ) | |
| TERRY E. WOOD | ) | Williamson Circuit |
| | ) | |
| Appellant | ) | Donald P. Harris, Judge |

FOR THE APPELLANT:                    FOR THE APPELLEE:

John H. Henderson, Jr.                 Charles W. Burson
Public Defender                        Attorney General and Reporter

Maurine C. Hatchett                    Christina S. Shevalier
Assistant Public Defender              Assistant Attorney General
Franklin, TN                           Nashville, TN

                                       Joseph D. Baugh
                                       District Attorney General

                                       Mark Puryear
                                       Assistant District Attorney
                                        General
                                       Franklin, TN

O P I N I O N

AFFIRMED                                              Birch, J.

We granted the application of Terry E. Wood, the defendant, for permission to appeal in order to resolve an issue of first impression in Tennessee:  whether the return of a sealed presentment[1] engages an accused person's speedy trial rights under the Sixth Amendment to the United States Constitution and Article I, § 9, of the Tennessee Constitution.  After a thorough examination of the record and careful consideration of the issue, we conclude, for reasons appearing below, that the return of a presentment, whether sealed or unsealed, whether the accompanying *capias* is executed or unexecuted, is a formal accusation that engages constitutional speedy trial provisions.  Thus, we must apply the criteria of Barker v. Wingo[2] and State v. Bishop[3] to determine whether the thirteen-year delay in this case deprived the appellant of his constitutional speedy trial rights.  We find that there was no such deprivation and affirm the judgment of the Court of Criminal Appeals.

A Williamson County grand jury in September 1979 returned a presentment charging the defendant with the murder of Joseph R. Henderson.  The presentment as returned was sealed, and a *capias* was issued for the defendant, who was then in the custody of Alabama authorities awaiting trial on a different murder charge.

[1]For our purposes, "presentment" is synonymous with "indictment."

[2]407 U.S. 514 (1972).

[3]493 S.W.2d 81 (Tenn. 1973).

2

The State knew the circumstances of the defendant's detention in Alabama; however, the *capias* was not executed because the Williamson County authorities believed that Alabama would sentence the defendant to death by electrocution.

The defendant was convicted on the Alabama charge and sentenced to a prison term. Thus, in 1983, the defendant was alive and still in the custody of the Alabama authorities. In November 1983, the Circuit Court of Williamson County placed the cause on the "retired docket." For reasons not clearly shown in the record, the Williamson County sheriff's department lodged a detainer against the defendant in March 1984. Although aware of the detainer,[4] the defendant did not pursue a speedy trial under the Interstate Compact on Detainers[5] at that time.

In June 1989, Alabama offered the defendant parole. This parole was, however, conditioned on the defendant's agreement to submit to the Tennessee detainer. The defendant refused and continued serving the Alabama sentence.

In March 1990, the defendant wrote the Williamson County court clerk inquiring about the detainer; the clerk did not

_____

[4]The defendant testified that in 1984 he learned of the Williamson County charges when someone mailed copies of the "warrants" to him in Alabama.

[5]Tennessee adopted the Compact in 1970. Tenn. Code Ann. § 40-31-101 (1990). Alabama adopted the Compact in 1978. Ala. Code § 15-9-80 (1995).

respond.  On September 4, 1990, the defendant filed a *pro se* motion for a speedy trial.  The trial court docketed this motion for hearing despite the fact that the defendant failed to follow the required procedure.[6]

The trial court conducted a hearing on the motion on September 10, 1990.  The defendant was not present, and no one has offered a clear recollection of those proceedings.  In any event, the docket contains an entry:  "detainer lifted."

Subsequently, the District Attorney General investigated further and determined that the case should be prosecuted.  He then initiated procedures under the Interstate Compact Act to return the defendant to Williamson County for trial.  Trial commenced February 9, 1993, almost fourteen years after the return of the presentment.

At trial, the victim's girlfriend testified that she and the victim had planned to meet the night the victim disappeared. When he did not appear, she began searching for him.  She drove first to a bar where he had been when he last spoke with her by telephone that afternoon.  When she did not see his van there, she

_____

[6]This Court has held that under the Compact, the defendant has the burden of giving notice to the receiving state of his or her request under Article III of the Compact for prompt disposition of the charges.  State v. Moore, 774 S.W.2d 590 (Tenn. 1989).  Strict compliance with the notice and certification procedures outlined in the Compact is required.  State v. Grizzell, 584 S.W.2d 678 (Tenn. Crim. App. 1979).  Since the defendant did not comply with the procedures outlined in the Compact, the provisions of that statutory remedy did not apply.

pulled into a trailer park across the street. As she was pulling into the trailer park, the victim's van was pulling out. The victim was driving, and a man she later identified as the defendant was in the passenger seat. She made eye contact with the victim; he made a hand motion as though to wave her away. She tried to follow the van, but lost it. She never saw the victim alive again.

Later that evening, the defendant was observed in possession of the victim's van and was wearing certain items of clothing known to belong to the victim. The defendant told his girlfriend that he had to "bust" someone. Within a day or so of the victim's disappearance, the defendant accosted and detained two females in Barren County, Kentucky.[7] During the encounter, the defendant bragged to them that he had killed the victim. The females assisted him in disposing of some of the victim's personal possessions. These items were recovered when they escaped from the defendant and took investigators to the site where the items had been thrown. Several days later, the victim's girlfriend saw a newspaper article that included a photograph of the defendant. She immediately contacted the authorities and told them the photograph depicted the man she had seen with the victim the night he disappeared. When the defendant was arrested on charges of rape and kidnapping of the two females, the authorities confiscated a *Colt* .38 revolver. During questioning, the defendant gave Kentucky

---

[7]The fact that the females were raped was not admitted as evidence in the trial of this cause.

police two versions of how he had acquired the victim's van. First, he said he found the van on the side of the road near I-65 with the keys inside. He said later that the victim had gone on a trip and had left the van with him. The victim's body was discovered in Williamson County ten days after his disappearance. He had been shot three times--twice in the head and once in the abdomen.

Significantly, none of the State's witnesses had difficulty recalling the facts surrounding the victim's disappearance; however, in the period between presentment and trial, one non-critical witness (a criminal investigator) died. Neither the *Colt* .38 revolver seized from the defendant at the time of his arrest in Kentucky nor the bullet fragments recovered from the victim's body could be located; nevertheless, the ballistic report from the Tennessee Bureau of Investigation was available.

The jury convicted the defendant of first-degree murder and possession of a firearm in the commission of murder. In addition to life imprisonment for the murder conviction, the trial court imposed a five-year sentence for the firearm violation--to be served consecutively to the other Alabama and Tennessee convictions.

The defendant makes no challenge to the convicting evidence; rather, he insists that the State, by permitting

approximately thirteen years to pass between presentment and trial, violated his Sixth Amendment right to a speedy trial. He urges further that the lengthy delay violated his due process rights and requires dismissal of the charges.

The State contends that because the presentment was sealed, the period within which the defendant should have filed for a speedy trial did not begin to run until the execution of the *capias* on October 9, 1992, thereby making the Barker balancing test inapplicable. The State reasons that because the speedy trial clause does not apply, the issues must be analyzed under due process criteria. To prevail under such criteria, the State asserts, the defendant must prove that actual prejudice resulted from the delay. The rationale underlying this requirement, the State says, is that the purpose for the speedy trial provisions of our state and federal constitutions is to prevent oppressive pretrial incarceration, protect a defendant from the humiliation and anxiety associated with a public accusation, and avoid impairment of a defendant's defense caused by a lengthy delay. Hence, a defendant in a sealed presentment case is not exposed to oppressive pretrial incarceration and, because he is unaware of the pending charges, is not subject to such anxiety and humiliation. Moreover, the State argues that the statutes of limitation protect an accused from having to defend against stale charges.[8] The

_____

[8] In first-degree murder cases the protection offered by a statute of limitation does not exist since there is no statute of limitation for that crime. *See* Tenn. Code Ann. § 40-2-101(a)

7

conclusion should be, the State asserts, that the conviction must be affirmed since actual prejudice was not proven.

We first address the issue of whether a sealed presentment is sufficient to require a speedy trial analysis. In our view, the State's position conflicts with the Sixth Amendment to the U.S. Constitution and with Article I, § 9, of the Tennessee Constitution. Both constitutional provisions apply, by their own terms, to persons "accused" in a "criminal prosecution." Clearly, to be an "accused" one must be faced with a "formal accusation." The United States Supreme Court has held that the Sixth Amendment guarantee to a speedy trial does not apply until the defendant becomes an "accused." United States v. Marion, 404 U.S. 307, 313 (1971). Specifically, "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." 404 U.S. at 320 (emphasis added). This Court has also noted that no speedy trial rights arise until after formal accusation, either by arrest or by grand jury action. State v. Baker, 614 S.W.2d 352, 353 (1981). Moreover, Tenn. Code Ann. § 40-2-104 (1990) expressly provides that a prosecution is commenced by finding an indictment

_____

(1990): "A person may be prosecuted, tried and punished for an offense punishable with death or by imprisonment in the penitentiary during life, at any time after the offense is committed."

8

or presentment.  We have never distinguished between sealed and unsealed indictments.

A sealed indictment is no different from an unsealed indictment except that it is not subject to inspection by, or disclosure to, the public until the defendant is arrested or makes bail.  Tenn. Code Ann. §§ 40-13-111, -112.  It still has the effect of formally charging the defendant with a crime.

Additionally, the majority of federal courts that have considered the issue have applied the speedy trial analysis to sealed indictment cases.  *See, e.g.*, United States v. Shell, 961 F.2d 138, 143-45 (9th Cir. 1992); United States v. Lewis, 907 F.2d 773, 774 (8th Cir.), *cert. denied*, 498 U.S. 906 (1990); United States v. Mitchell, 769 F.2d 1544, 1547-48 (11th Cir. 1985), *cert. denied*, 474 U.S. 1066 (1986); United States v. Alo, 439 F.2d 751 (2nd Cir.), *cert. denied,* 404 U.S. 850 (1971); United States v. Shelton, 820 F. Supp. 461 (W.D. Mo. 1992); United States v. Rogers, 781 F. Supp. 1181 (S.D. Miss. 1991).  *But see* United States v. Watson, 599 F.2d 1149, 1156, *modified by* United States v. Muse, 690 F.2d 15 (2nd Cir. 1979), *cert. denied*, 450 U.S. 984 (1981)(right to speedy trial attaches not when sealed indictment filed, but when unsealed); United States v. Hay, 527 F.2d 990 (10th Cir. 1975), *cert. denied*, 425 U.S. 935, 994 n.4 (1976)(since indictment sealed defendant suffered neither restraint on his liberty nor public accusation before his arrest).

9

In our opinion, the better reasoned cases recognize that even though a defendant under a sealed indictment does not suffer restraint on his or her liberty or the anxiety and humiliation that accompany a public accusation, such a defendant still has a strong interest in preserving his or her ability to prepare for trial. Lengthy delays following the issuance of an indictment, whether sealed or not, may directly affect this ability to prepare for trial. Faded memories, erosion or loss of potentially exculpatory evidence, and loss of potentially favorable witnesses are all possible results of a lengthy delay.

We conclude, accordingly, that the return of a presentment, whether sealed or not, is a "formal accusation" such as would engage an accused person's speedy trial rights.

It remains for us to determine whether the defendant's speedy trial rights were violated. In Barker v. Wingo,[9] the United States Supreme Court adopted a balancing test to determine whether a defendant's right to a speedy trial had been denied under the Sixth Amendment. This test involves the balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay. We adopted

---

[9]407 U.S. 514 (1972).

the Barker analysis in State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973).

Regarding the first factor, length of the delay, the Barker Court noted that the length of the delay is the triggering mechanism that will necessitate the consideration of the other three factors.  "'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'"  State v. Baker, 614 S.W.2d 352, 355 (Tenn. 1981)(quoting Barker, 407 U.S. at 530).  The reasonableness of the length of the delay depends on the complexity of the case.  407 U.S. at 530-31.  More recently, the Court noted in Doggett v. United States that "the presumption that pretrial delay has prejudiced the accused intensifies over time."  112 S. Ct. 2686, 2691 (1992).  In this case, the delay of thirteen years is, as the State concedes, clearly sufficient to require an analysis of the remaining three factors.  This factor weighs favorably for the defendant.

The second Barker factor, reason for the delay, generally falls into one of four categories: (1)  intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence;[10] (3)

---

[10]Overcrowded court dockets or simple lack of diligence fall into this category.

11

delay necessary to the fair and effective prosecution of the case;[11] and (4) delay caused, or acquiesced in, by the defense.[12] The first type, intentional delay, is weighed heavily against the State. The second type, negligent delay, is also weighed against the State although not as heavily as deliberate delay. The third type of delay is, by definition, justifiable and is not weighed against either party. The fourth type of delay, which is caused or acquiesced in by the defendant, is weighed against the defendant.

The delay in this case resulted from gross negligence by the State. The District Attorney General testified that he knew the defendant was in custody in Alabama on another charge when the presentment was issued in September 1979. The case came up for docket call several times over the course of the years until it was retired in November 1983. During this entire period, the State knew that the defendant was in the custody of Alabama authorities. No explanation appears of record why the State failed to respond to the defendant's 1990 written request for a speedy trial. Not until the District Attorney General learned that the defendant might be granted parole in Alabama did the State begin to prepare for trial.

_____

[11]Delays which fall into this category include those cases where the complexity of the case reasonably requires more time to prepare for trial, or where the delay is necessary to perform further investigation or to locate a missing witness, for example.

[12]Good faith attempts to plea-bargain or repeated defense requests for continuances are examples of this category. *See*, *e.g.*, State v. Taylor, 771 S.W.2d 387 (Tenn. 1989), *cert. denied* 497 U.S. 1031 (1990); State v. Johnson, 781 S.W.2d 873 (Tenn. Crim. App. 1989), *overruled on other grounds by*, State v. Howington, 907 S.W.2d 403 (Tenn. 1995).

Although there is no clear evidence of bad faith by the State, a delay based on the prediction that disposition of another case in a foreign jurisdiction will serve to keep the defendant incarcerated will always risk dismissal if, in fact, the State ultimately chooses to prosecute. *See* Arrowsmith v. State, 175 S.W. 545, 546-47 (Tenn. 1915); State v. Kolb, 755 S.W.2d 472 (Tenn. Crim. App. 1988); State v. Wallace, 648 S.W.2d 264 (Tenn. Crim. App. 1980). Not only does such a delay impinge upon an accused's ability to defend himself, but it also affects his eligibility for concurrent sentencing, parole, and other rehabilitative programs. Here, there was no valid reason for the delay; this factor must weigh in favor of the defendant.

The third factor, an accused person's assertion of his right to a speedy trial, may or may not play an important role in the ultimate determination of whether that person has been deprived of his right to a speedy trial. The Barker Court rejected an outright "demand" rule, whereby failure to seek a speedy trial would result in a waiver of that right. 407 U.S. at 529-30. This Court has likewise rejected such a rigid rule. Bishop, 493 S.W.2d at 84. The primary burden, after all, is on the courts and prosecutors to assure that cases are brought to trial. Barker, 407 U.S. at 529. Nevertheless, a defendant's assertion or failure to assert the right to a speedy trial is one factor to consider in the overall balance in determining whether the right has been unconstitutionally deprived. *Id.* at 528. A defendant's assertion

13

of the speedy trial right is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied. Id. At 531-32; Bishop, 493 S.W.2d at 85.

Failure to assert the right implies a defendant does not actively seek a swift trial. "[E]vidence that the defendant did not want a speedy trial would never warrant the finding of a constitutional violation except in 'extraordinary circumstances.'" Baker, 614 S.W.2d at 355.[13] In this case, the defendant learned in 1984 that there was a detainer against him. Thereafter, he did nothing until 1990. Even after he learned that his Alabama parole would be conditioned on his return to Tennessee for trial on the murder presentment, he waited several months before seeking legal assistance and demanding a speedy trial. Hence, we infer that the defendant did not necessarily want a speedy trial in Tennessee. After all, had the Tennessee charge ultimately died of neglect, there would have been no impediment to an unconditional parole in Alabama. Asserting his right to trial would have prevented that, and it would have exposed the defendant to the risk of a Tennessee conviction. We find that the defendant acquiesced in the delay by

---

[13]However, an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right. Doggett, 112 S. Ct. at 2691; *see also* Wright v. State, 405 S.W.2d 177, 180 (Tenn. 1966); State v. Wallace, 648 S.W.2d 264, 267 (Tenn. Crim. App. 1980).

14

failing to assert his right to a speedy trial. This factor must weigh in favor of the State.

We view the fourth factor as the most important: whether the accused suffered prejudice by the delay. Baker, 614 S.W.2d at 355-56 (*citing* Barker, 407 U.S. at 532; Bishop, 493 S.W.2d at 85); State v. Thomas, 818 S.W.2d 350, 363 (Tenn. Crim. App. 1991). Usually, it is relatively easy to determine whether a defendant has been prejudiced by inordinately long pretrial incarceration, or whether he or she has been subjected to the stress and anxiety that accompany a public accusation over an extremely long period of time. It is often extremely difficult, however, for a defendant to demonstrate specifically how the delay has impaired his ability to defend himself. Courts have recognized this difficulty and consequently do not necessarily require a defendant to affirmatively prove particularized prejudice. Doggett, 112 S. Ct. at 2692; Moore v. Arizona, 419 U.S. 871 (1974). Furthermore,

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

15

<u>Doggett</u>, 112 S. Ct. at 2692-93 (citations omitted).

Although we can assume that he experienced some anxiety and uncertainty about the ultimate disposition of these charges, nothing in the record suggests that the defendant's ability to present his defense was impaired.  In fact, the defendant does not claim specific prejudice resulting from the delay.

While "affirmative proof of particularized prejudice is not essential to every speedy trial claim,"  112 S. Ct. at 2692, and "the presumption that pretrial delay has prejudiced the accused intensifies over time," *id.* at 2691, we believe the facts in this case are distinguishable from those in <u>Doggett</u>.

The defendant in <u>Doggett</u> was charged with conspiracy to import and distribute cocaine.  After his indictment in 1980, Doggett, unaware of the charges pending against him, left the country.  He was later arrested and imprisoned in Panama on another matter.  The Drug Enforcement Agency (DEA) learned of Doggett's whereabouts and requested expulsion to the United States.  The DEA did not pursue its request further until after Doggett had been released and apparently abandoned its search soon thereafter.  In 1982, Doggett legally entered the United States and lived openly. In 1988, the government conducted a routine credit check on fugitives.  Consequently, Doggett was arrested.  The Supreme Court

16

held that Doggett had been deprived of his right to a speedy trial.

Significantly, while Doggett was in no way responsible for the delay in his case, Wood deliberately chose to forgo a speedy trial request, hoping instead that the Tennessee charges would die of neglect. He acquiesced in the delay from the time he learned of the detainer in 1984 until 1990, after Alabama had offered conditional parole. Any presumption of prejudice is weakened to some degree by the defendant's acquiescence in the delay. Therefore, the prejudice factor weighs in favor of the State.

We find that the length of the delay, on the one hand, and the lack of any justifiable reason for such delay, on the other hand, make this a close case. Nevertheless, balancing all of the Barker factors, we conclude that

> 1. The length of the delay of thirteen years was presumptively prejudicial and weighs in favor of the defendant.
>
> 2. The delay was caused by the State's negligence and weighs in favor of the defendant.
>
> 3. The defendant failed to assert his right to a speedy trial until eleven years had passed-- only after he discovered the pending Tennessee charge was jeopardizing his parole in Alabama. This factor weighs in favor of the State.

4. The presumption of prejudice was weakened by the defendant's acquiescence in the delay. This factor weighs in favor of the State.

In the balancing analysis, the fourth factor is entitled to the greatest weight. Accordingly, we conclude that the defendant was not deprived of his right to a speedy trial under federal or state constitutional principles.

We hold that the return of a sealed presentment engages an accused's right to a speedy trial. The fact that a defendant is incarcerated in another jurisdiction will not justify delay if the State knows his whereabouts. The State is primarily responsible for prosecuting an accused in a timely manner. For defendants who choose to risk that the State will ultimately decline to prosecute them, their acquiescence in the delay by failing to assert their right to a speedy trial may serve to weaken any presumption of prejudice, depending, of course, on the nature of the case and the evidence presented. The judgment of the Court of Criminal Appeals is affirmed.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, J.

DISSENT:
Reid, White, JJ.

18